**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BARRY ALOU, : | |
| Petitioner, : | Civil Action 10-3728 (SRC) |
| v. : | **MEMORANDUM OPINION AND ORDER** |
| ERIC H. HOLDER et al., : | |
| Respondents. : | |

This matter having come before the Court upon Petitioner's filing of a habeas application, see Docket Entry No. 1 ("Petition"), and it appearing that:

1. The Petition, a rather lengthy submission (consuming 29 single-spaced pages), is effectively a narrative depicting the events associated with: (a) Petitioner's criminal charges; (b) the alleged reasons for his decision to plea guilty; (c) the consequences of his conviction (which, inter alia, opened Petitioner to removal proceedings); (d) the initial stages of the immigration action instituted against him; and (e) his current detention in anticipation of removal to Guinea, his country of origin. See id. Correspondingly to the extent that this lengthy narrative, seems to challenge the performance of his criminal trial counsel (who, allegedly, failed to advice Petitioner that the plea Petitioner was

taking opened him to removal action),[1] the propriety of the removal order – that was actually entered or might be entered – against Petitioner on the grounds of that plea, as well as Petitioner's current detention, either in anticipation of removal or in anticipation of the outcome of his immigration proceedings.[2] See id.

2. While Petitioner's conflation of the above-discussed various events, immigration proceedings, orders of conviction, etc., into one single application is understandable, Habeas Rules do not envision such a lump-sum challenge to the circumstances which a litigant might find himself/herself in. Rather, pursuant to Habeas Rule 2(e), Petitioner is obligated to submit a separate habeas application challenging each particular determination, i.e., he cannot challenge different determinations in one action. See 28 U.S.C. § 2254 Rule 2(c), applicable to § 2241 petitions through Habeas Rule 1(b). Therefore, Petitioner shall select, for the purposes of each his future habeas actions, the particular order, determination

---

[1] Petitioner asserts that, had he known he might become subject to removal on the grounds of the offense he was pleading guilty to, he would have elected in favor of a jury trial in hope to obtain acquittal. See Docket Entry No. 1, at 4.

[2] While the Petition at bar is lengthy, it is largely consumed by legal arguments, with its factual predicate being rather undeveloped and presented in a patchy fashion, i.e., being scattered throughout the multitude of legal arguments Petitioner seeks to pursue. See generally, Docket Entry No. 1.

or action (or inaction) he wishes to challenge, and then file an individual petition with regard to each specific challenge.

3. Moreover, some challenges that Petitioner seems to be interested in pursuing fall outside this Court's jurisdiction.

    a. For instance, in the event Petitioner wishes to challenge his order of removal (rather than the fact of his current detention in anticipation of removal), this Court has no jurisdiction to consider such challenge under the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005). Rather, if Petitioner's order of removal has become final, Petitioner's challenges should be filed with the court of appeals having territorial jurisdiction over the district where Petitioner's immigration judge holds seat. See 8 U.S.C. § 1252(a)(5); <u>Kolkevich v. Attorney General of the United States</u>, 501 F.3d 323, 326 (3d Cir. 2007) (the Real ID Act "eliminated availability of habeas corpus relief in the district courts for aliens seeking to challenge orders of removal. Instead, Congress substituted petitions for review, filed with the courts of appeals within the first 30 days after issuance of an order of removal, as the sole vehicle whereby aliens could challenge their removal"). Here, it is unclear from the face of Petitioner's voluminous application whether Petitioner's order of removal has

become final: (a) on one hand, Petitioner discusses cases addressing the issue of mandatory detention of aliens awaiting finalization of their orders of removal, see Docket Entry No. 1, at 9-16;[3] but (b) on another hand, Petitioner relies on provisions and case law addressing post-final-order-of-removal detentions, see id. at 7, 9, 19-22, and asserts that he has already forfeited his rights to an immigration appeal, thus vaguely suggesting that his order of removal might have become final. Since this Court has no clarity as to the current state of Petitioner's order of removal, the Court declines to forward Petitioner's application to the Court of Appeals. See Alcantara v. AG of the United States, 2009 U.S. App. LEXIS 11952 (3d Cir. Jan. 26, 2009) (although it was clear that the District Court transferred, under the REAL ID Act, the petitioner's ambiguously drafted application to the Court of Appeals out of abundance of caution, such

---

[3] The Court notes, in passing, that – to the degree the Court could discern Petitioner's challenges to pre-removal-order detention of aliens (which might be reflective of Petitioner's own circumstances or raised by Petitioner hypothetically, or in good faith error) – these challenges appear to be without merit for the reasons articulated in Pierre v. Weber, 2010 U.S. Dist. LEXIS 32643 (D.N.J. Mar. 31, 2010). However, granted the ambiguity of Petitioner's legal position and underlying factual predicate, the Court stresses that no statement made in this Memorandum Opinion and Order shall be construed as a disposition on that issue: in the event Petitioner files a § 2241 application to that effect, the judge presiding over such action would be the sole entity to render on Petitioner's challenges.

    transfer was improper because no final order of removal had been entered against alien and the matter had to be remanded to district court). That being said, the Court's decision not to transfer Petitioner's application shall not be construed as preventing, in any way, Petitioner from challenging his final order of removal in the appropriate court of appeals once his removal order finalizes (or if his removal order has already finalized).

b.   By the same token, this Court has no jurisdiction to look into the circumstances of Petitioner's criminal conviction, the validity of his plea and (in)effectiveness of the assistance provided to Petitioner by his defense counsel. While allegations are raised in the Petition (<u>i.e.</u>, that Petitioner's counsel failed to advise Petitioner that he was pleading guilty to an offense opening him to removal proceedings) which suggest Petitioner's interest in raising a claim under <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473 (2010), such challenges have to be raised by means of application for post-conviction relief or a writ of error <u>coram nobis</u>, or other appropriate application, filed with the appropriate federal or state court: depending on the circumstances of Petitioner's underlying conviction. Having no

information as to what forum would be appropriate for resolution of Petitioner's challenges to the validity of his conviction, this Court will not transfer Petitioner's application. Again, the Court's decision not to transfer Petitioner's application shall not be construed as preventing, in any way, Petitioner from challenging his conviction in the court of appropriate jurisdiction, if Petitioner so desires. The Court, however, stresses, that it expresses no opinion as to substantive or procedural (in)validity of Petitioner's <u>Padilla</u> challenges.[4]

---

[4] In order to prevail on a claim of ineffective assistance of counsel, a petitioner must establish both (1) a constitutional deficiency in his attorney's representation and (2) prejudice. See <u>Padilla</u>, 130 S. Ct. at 1482 ("Under <u>Strickland [v. Washington,</u> 466 U.S. 668 (1984)], we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'"). The Supreme Court, in <u>Padilla</u>, held that, in order to avoid constitutionally deficient representation, a criminal defendant's attorney must inform her client when a risk of deportation would accompany a criminal conviction. See <u>id.</u>. at 1482. Moreover, "when the deportation consequence [of a conviction] is truly clear, . . . the duty to give correct advice is equally clear." <u>Id.</u> at 1483. That being said, the Court in <u>Padilla</u> found constitutionally deficient representation, but it did not reach the question of prejudice, which is the second requirement of a claim of ineffective assistance of counsel. See <u>id.</u> at 1486-87. In that respect, where a petitioner - as Petitioner here - merely claims that, had known that his guilty plea would make him removable, he would have gone to trial instead of pleading guilty and might have been acquitted by a jury, such conclusory assertions do not show a reasonable probability that the result of the proceedings would have been different in the absence of

4. Finally, the Court – having no clarity as to the finality of Petitioner's order of removal – has no reason to initiate an inquiry into the validity of Petitioner's request for relief under the holding of Zadvydas v. Davis, 533 U.S. 678 (2001), since Petitioner's "removal period" in detention, in violation of Zadvydas, could not have taken place prior to finalization of Petitioner's order of removal.[5] In other words, only if Petitioner is not removed to Guinea within six months after his removal order becomes final, Petitioner may file another § 2241 petition asserting his Zadvydas challenges and shift

---

his attorney's alleged error. See United States v. Babalola, 248 F. App'x 409 (3d Cir. 2007) ("In the guilty plea context, this court has interpreted Strickland's prejudice prong to require the defendant to show a reasonable probability both that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,' and that had he not pleaded guilty he would not in any event have been convicted at trial") (emphasis removed, internal citations omitted); United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989); see also Strickland, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome"). Consequently, where it is probable that a jury would have found the petitioner guilty, and the petitioner would have faced deportation – if not under 8 U.S.C. § 1227(a)(3)(D), then under 8 U.S.C. § 1227(a)(2)(A)(iii) – the petitioner fails to make the required showing of prejudice. See United States v. Dwumaah, 2010 U.S. Dist. LEXIS 53916 (M.D. Pa. June 2, 2010).

[5] The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either taken and ruled upon, or the time to appeal expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B).

the burden to the government (that is, obligating the government to show feasibility of Petitioner's removal) if Petitioner states more than his bald conclusion that he "demonstrated" that his removal is not foreseeable.[6] Consequently, Petitioner's vaguely drawn Zadvydas challenges will be dismissed, as unripe, without prejudice to raising these challenges in this District once Petitioner can demonstrate that such a claim is ripe.

It IS, therefore, on this 22nd day of October, 2010,

ORDERED that Petitioner's § 2241 application is dismissed without prejudice to Petitioner's raising his challenges, once ripe, in the courts of appropriate jurisdiction and in accordance with Habeas Rule 2(e) requiring filing of individual petition

---

[6] To that effect, the Court also reminds Petitioner that the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides a *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.* To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas 533 U.S. at 701 (emphasis supplied).

with regard to each particular determination (or action/inaction) the litigant wishes to challenge; and it is further

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Petitioner by regular U.S. mail and close the file on this matter.

/s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.